UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARON DOUGLAS CASTLIN,

    Petitioner,

v.

GREG LEWIS, Warden,

    Respondent.

Case No. 11-cv-06694-JST (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; GRANTING CERTIFICATE OF APPEALABILITY**

Aron Douglass Castlin, a California prisoner, has filed this pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the deprivation of his credits due to the reclassification of his workgroup status from D-1 (credit-earning) to D-2 (non credit-earning). Petitioner alleges that his workgroup status reclassification violates the terms of his 2007 plea agreement and the Ex Post Facto Clause of the United States Constitution. Respondent was ordered to show cause why the petition should not be granted. Respondent has filed an answer, and Petitioner has filed a traverse. For the reasons set forth below, the petition is denied.

**I.  BACKGROUND**

**2007 Conviction.** Petitioner is incarcerated pursuant to a guilty plea in 2000. Docket #5, Ex. 2.[1,2] In 2007, while still incarcerated, Petitioner was charged in Humboldt County Case No.

---

[1] Petitioner pleaded guilty to attempted murder along with several enhancements, including a gang enhancement. Docket #5, Ex. 2. Petitioner was sentenced to 19 years for his 2000 conviction. Id., Ex. 1 at 2. Petitioner alleges that his 2000 negotiated plea agreement required him to serve 19 years at only 85 percent. Id., Ex. 2 at 16.

[2] Petitioner brought similar challenges to his work status reclassification as it related to his 2000 conviction and plea agreement in habeas petitions filed in the Central District of California. See Castlin v. Lewis, Nos. CV 11-8636-DSF and CV 12-269-DSF, 2014 WL 897358 (C.D. Cal. March 5, 2014). Petitioner argued that the failure to inform him that pleading guilty to a gang enhancement would trigger a lifetime registration requirement violated his rights to due process and to effective assistance of counsel. Id. at *4. He also argued that applying California Penal Code § 2933.6 to him violated his plea agreement and the Ex Post Facto Clause of the federal Constitution. Id. at *6. The district court denied his habeas petitions in a reasoned decision.

CRPB-065173 with possession of a weapon in prison in violation of California Penal Code section 4502(a). Docket #1 at 2 & Ex. A. Petitioner pled guilty to the charge on January 11, 2007. Docket #1 at 19. Petitioner claims that the 2007 negotiated plea agreement required him to serve one year minus 15% credits. Docket #1 at 11.

**Gang Member Status.** Petitioner was identified as an active prison gang member in 2000. Docket #15, Ex. 2. On August 6, 2006, a gang validation/rejection review was conducted and Petitioner was revalidated as an active prison gang member. The revalidation was supported by a confidential memorandum dated March 29, 2006; a confidential memorandum dated January 31, 2006; and a California Department of Corrections ("CDC") Form 128B[3] dated August 2, 2006. Docket #15, Ex. 2. As a result, Petitioner was assessed an indeterminate term in the Security Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP"). Docket #15, Ex. 3.

Petitioner's status as an active prison gang member is reviewed regularly.[4] In January 2010, Petitioner had a 180-day review before the Unit Classification Committee ("UCC"). Petitioner refused to appear for the review. The UCC reviewed and affirmed Petitioner's classification as an active prison gang member. Petitioner was informed that the California Department of Corrections and Rehabilitation ("CDCR")'s "recognized avenues for release from SHU are through the debriefing process or through being determined to be an inactive prison gang member or associate as delineated in [California Code of Regulations], Title 15, sections 3378(e) and 3341.5(c)(4) and (5)." Docket #15, Ex. 4 at 2.

In February 2011, Petitioner had an annual review of his classification status before the Institution Classification Committee ("ICC"). His status as an active prison gang member was affirmed, and he was again informed of the "avenues for release from SHU[.]" Docket #15, Ex. 4

---

[3] CDC Form 128B is used to document minor misconduct. Cal. Code Regs. tit.15, § 3326(b) (2014).

[4] The Operations Manual of the California Department of Corrections and Rehabilitation ("CDCR") requires that the Institution Classification Committee ("ICC") review all indeterminate cases at least annually and refer them to the Classification Staff Representative for alternate placement consideration. CDCR Operations Manual § 62050.13.19 (2014).

at 3. The ICC asked Petitioner if he was interested in debriefing, and he replied, "No." Id. The ICC continued Petitioner's SHU housing for an indeterminate term. Id.

Petitioner's classification status was reviewed again in July 2011, January 2012, July 2012, February 2013, and July 2013. Docket #15, Ex. 4 at 4–10, 12. In each review, prison officials affirmed his active prison gang status and therefore retained Petitioner in SHU housing for an indeterminate term. In connection with the January 2012, July 2012 and February 2013 status reviews, Petitioner was advised that he could be released from SHU if he were successfully debriefed. Petitioner has not sought to participate in the debriefing process and currently remains housed in SHU.

**Amendment of California Penal Code Section 2933.6**. In January 2010, California Penal Code section 2933.6 was amended by Senate Bill 18. In relevant part, the amended section 2933.6(a) mandates that persons placed in SHU upon validation as a prison gang member or associate are no longer eligible to earn credits pursuant to sections 2933 (worktime credits) or 2933.05 (program credits) of the California Penal Code during the time they are housed in SHU. In its entirety, section 2933.6(a) now reads:

> Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct.

Cal. Penal Code § 2933.6(a) (West 2014).

**Reclassification of Work Status.** Pursuant to the changes in California Penal Code section 2933.6, Petitioner's work status was reclassified from D-1 (credit-earning) to D-2 (non credit-earning) on February 10, 2010. Docket #1 at 6, 11, 14. Petitioner alleges that this reclassification deprived him of the credits promised to him as part of his 2007 negotiated plea agreement.

**State Habeas Petition.** On September 24, 2010, Petitioner filed a state habeas petition in

3

Del Norte County Superior Court challenging his workgroup classification as it related to his 2007 conviction and sentence in Del Norte County Case No. HCPB10-5233. Docket #15, Ex. 7. On November 24, 2010, the superior court denied his petition in a reasoned decision:

> The Petition is denied because Petitioner has failed to establish sufficient grounds or circumstances upon which relief may be granted.
>
> Credits are not a vested right; they must be earned by the inmate.
>
> Any action to withdraw from the Petitioner's plea bargain must be taken in the Court where the plea was entered.

Id., Ex. 8. The state appellate court and the California Supreme Court summarily denied Petitioner's state habeas petitions. Id. at Exs. 11 and 12.

## II.   LEGAL STANDARD

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (West 2014); Rose v. Hodges, 423 U.S. 19, 21 (1975). A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412 (internal quotation marks omitted).  Only Supreme Court holdings that "squarely address[]" the issue presented are clearly established precedent. Wright v. Van Patten, 552 U.S. 120, 125 (2008).  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

The state court decision to which section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  Although Ylst was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. Barker, 423 F.3d at 1092 n.3 (citing Lambert v. Blodgett, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and Bailey v. Rae, 339 F.3d 1107, 1112–13 (9th Cir. 2003)).  In Petitioner's case, the last reasoned decision is from the Del Norte County Superior Court.

### III.   DISCUSSION

Since June 2007, Petitioner has been housed in PBSP's SHU as a result of being validated as an active prison gang member.  Docket #15, Ex. 3.  Prior to the amendment of California Penal Code section 2933.6, Petitioner was able to earn time credits that reduced the length of his sentence despite being housed in SHU.  After section 2933.6 was amended in January 2010, Petitioner's housing in SHU made him ineligible to earn worktime or program credits. Accordingly, in February 2010, he was reassigned from a credit-earning workgroup status

(Workgroup D-1) to a non credit-earning workgroup status (Workgroup D-2). In the instant habeas petition, Petitioner challenges his workgroup reclassification as a breach of his 2007 plea agreement and as violating the Ex Post Facto Clause of the federal Constitution.

### A. Applicability of California Penal Code § 2933.6

As an initial matter, the Court addresses Petitioner's argument that California Penal Code section 2933.6 does not apply to him because he has not committed any misconduct. Docket #18 at 10. Petitioner repeatedly emphasizes that he has not suffered any rule violations and that his validation as a gang member is solely an administrative, rather than punitive, classification. Docket #1 at 15–16 and Docket #18 at 14–17. Petitioner misreads section 2933.6. It does not apply only to prisoners placed in SHU for the misconduct specified in section 2933.6(b). It also applies to anyone who is placed in SHU due to validation as a prison gang member or associate, which is recognized as misconduct by California regulation and courts. See Cal. Code Regs. tit. 15, § 3023(a) (2013) (current version at Cal. Code Regs. tit. 15, § 3023(c) (amended October 17, 2014)) ("Inmates and parolees shall not knowingly promote, further, or assist any gang as defined in section 3000); id. at § 3000 (2013) (current version at Cal. Code Regs. tit. 15, § 3023(c) (amended October 17, 2014)) ("gang" defined);[5] and In re Lopez, 2011 WL 6329840, *7 (Cal. Ct. App. 2011) (unpublished decision). In relevant part, section 2933.6 states: ". . . a person who is placed in a Security Housing Unit . . . upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit . . . . for that misconduct." Cal. Penal Code § 2933.6. Section 2933.6 is properly applied to Petitioner.

### B. Breach of Plea Agreement

Petitioner claims that the plea agreement guaranteed him 15% credit on his sentence, irrespective of his behavior in prison. See Docket No. 1 at 12 ("…this change in Petitioner's credit earning workgroup status has resulted in an increase in punishment and the length of time

---

[5] The newly amended versions of sections 3000 and 3023 of title 15 of the California Code of Regulations now use the term "Security Threat Groups" to refer to gangs. Cal. Code Regs. tit. 15, §§ 3000, 3023(c) (2014).

1    Petitioner shall serve in custody.  Petitioner shall have to serve the entire One year (1 year) and

2    shall <u>not</u> receive the 15% credit he was guaranteed per the plea agreement.").   He argues that his

3    workgroup reassignment in 2010 pursuant to California Penal Code section 2933.6 therefore

4    violated his due process rights because it breached his plea agreement by depriving him of the

5    guaranteed 15% credit.

6          The state court rejected these claims, stating that any action to withdraw from Petitioner's

7    plea bargain must be brought in the court where he entered the plea.  Since the state court declined

8    to decide these claims on the merits, our review is <u>de novo</u>.  See <u>Lambert</u>, 393 F.3d at 969

9    (constitutional claim has been decided on the merits for the purposes of Section 2254(d) when the

10   state court "has decided the petitioner's right to post conviction relief on the basis of the substance

11   of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or

12   other rule precluding state court review of the merits").

13         Fundamental fairness of due process requires that promises made during plea bargaining

14   be respected.  See <u>Johnson v. Lumpkin</u>, 769 F.2d 630, 633 (9th Cir. 1985); <u>see also</u> <u>Santobello v.</u>

15   <u>New York</u>, 404 U.S. 257, 262 (1971).  Plea agreements are contractual in nature and subject to

16   contract law standards of interpretation.  <u>In re Ellis</u>, 356 F.3d 1198, 1207 (9th Cir. 2004) (citing

17   Fed. R. Crim. P 11(c)).  In determining whether a plea agreement has been broken, courts look to

18   what was reasonably understood by the parties to be the terms of the agreement.  See <u>Brown v.</u>

19   <u>Poole</u>, 337 F.3d 1155, 1159–60 (2003).

20         The only evidence in the record as to the terms of the plea agreement are the probation

21   officer's report, the judgment, and a declaration from James Fallman, Petitioner's counsel during

22   the 2007 proceedings.  None of these documents support Petitioner's assertion that he was

23   guaranteed 15% time credit on his one-year sentence or, in essence, a sentence of 310.25 days.

24   The probation officer's report[6] and the judgment both reflect a one-year sentence to be served

---

[6] The probation report summarizes the plea agreement as follows: "On January 11, 2007, the defendant entered into a negotiated plea bargain with the District Attorney wherein he pled guilty to Possession of a Weapon, in violation of Section 4502(a) of the Penal Code, with the understanding that he would receive one third the middle term, or one year, to be served consecutive to any and all other sentences he is serving." Docket No. 1, Ex. A.

consecutive to any other sentences being served; neither document reflects a guarantee of 15% time credit. Docket #1, Ex. A and Docket #15, Ex. 1 at 1. Nor does the declaration from his public defender, James Fallman, support Petitioner's claim. Fallman's declaration states, in relevant part, that

> . . . Petitioner clearly told me he was bargaining for no more than 1 year minus the 15% credits that he would earn. He told me he would not accept the bargain at 1 year if he was not going to be eligible for the 15% credits. I told him the law provided the ability to earn 15% credits on a strike related conviction even if strikes themselves, as here, were dropped for purposes of his guilty plea.

Docket #1 at 25. Fallman's declaration does not discuss the terms of the plea agreement. Nor does Fallman make any statements about what the prosecutor understood to be the terms of the plea agreement.[7] Fallman's only declaration supports a finding that Petitioner sought eligibility to earn 15% time credit.

Even putting aside the foregoing concerns, the record supports only a finding that Petitioner was bargaining for a one-year sentence and *the ability* to earn 15% time credits. The plea agreement has not been breached because Petitioner still has the ability to earn time credits — he can be debriefed and released from SHU. Cal. Code Regs. tit. 15, § 3378.1(a), (d) (current version at Cal. Code Regs. tit. 15, § 3378.5(a), (d) (amended October 17, 2014)). His current inability to earn time credits is not due to the government breaching the terms of his plea agreement, but rather a result of Petitioner's own behavior, which has resulted in his validation as a gang member. See, e.g., Loredo v. Gipson, No. 1:13-cv-00250-LJD-BAM (HC) 2013 WL 1281570 at *4 (E.D. Cal. March 25, 2013). In fact, the record indicates that prison officials have offered Petitioner multiple opportunities to debrief, and he has refused. Docket #15, Ex. 4. The

---

[7] A plea agreement is a form of contract. "It is a well-established principle of California contract law that 'the law imputes to a person the intention corresponding to the reasonable meaning of his words and acts' based on 'his outward expression' and not 'his unexpressed intent.'" Brown v. DIRECTV, LLC, No. CV 12-08382 DMG EX, 2013 WL 3273811, at *4 (C.D. Cal. June 26, 2013) (citing Edwards v. Comstock Ins. Co., 205 Cal. App. 3d 1164, 1169 (1988). If Petitioner or his lawyer wanted to negotiate a plea agreement that guaranteed a certain amount of time credits, Petitioner's lawyer needed to say so. There is no evidence he ever did.

Court finds that Petitioner's plea agreement has not been breached and that his workgroup reassignment does not violate his due process rights.

### C. Violation of Ex Post Facto Clause of the Constitution

Petitioner argues that California Penal Code section 2933.6 violates the Ex Post Facto Clause of the United States Constitution because it penalized him for events prior to 2010 (his 2000 validation and related housing in SHU, and his 2007 revalidation and related SHU housing). Docket #1 at 16. Petitioner claims that applying section 2933.6 to him also violates the Ex Post Facto Clause because it resulted in the cancellation of previously earned credit. Docket #18 at 10. Petitioner also claims that the Classification Committee ordered that credits be restored to him and that the application of section 2933.6 either caused these credits to be cancelled or prevented the restoration of these credits. Id. There is no evidence in the record that any of Petitioner's credits were cancelled. Docket No. 1, Ex. B at 3. The Court therefore only addresses Petitioner's first argument — that section 2933.6 punishes him retroactively for his gang validation prior to 2010.

#### 1. Clearly established Supreme Court law

Article I, Section 10 of the United States Constitution prohibits states from passing ex post facto laws. An ex post facto law is one that applies to events occurring before the law's enactment and disadvantages the offender by altering the definition of the crime or increasing the punishment for the crime. Lynce v. Mathis, 519 U.S. 433, 441 (1997). The Supreme Court rulings discussing ex post facto challenges to laws potentially affecting the length of prisoners' sentences can be summarized as follows:

> An amendment making mandatory a sentence that was the maximum permissible under old law was an impermissible ex post facto law when applied to a person who committed his crime before the amendment. Lindsey v. Washington, 301 U.S. 397 (1937). An amendment forbidding prisoners from earning good conduct credits for six months after reincarceration following a parole violation was an impermissible ex post facto law for a prisoner who violated parole after the amendment but had been sentenced under the old law. Scafati v. Greenfield, 390 U.S. 713 (1968) (summary affirmance). An amendment that reduced the amount of good-time credits that could be earned was an impermissible ex post facto law when applied to a prisoner whose crime was committed before the

9

> amendment was enacted. Weaver v. Graham, 450 U.S. 24 (1981). An amendment that presented at most a speculative potential of a longer confinement (by increasing intervals between parole hearings for inmates most unlikely to be paroled) did not violate the Ex Post Facto Clause. Cal. Dep't of Corr. v. Morales, 514 U.S. 499 (1995). An amendment taking away accumulated provisional credits was an impermissible ex post facto law because it lengthened a period of incarceration for person sentenced under the old law. Lynce v. Mathis, 519 U.S. 433 (1997).

Nevarez v. Lewis, No. C 12-1912 SI (PR), 2012 WL 3646895, at *6 (N.D. Cal. Aug. 23, 2012).

### 2. Lower federal courts take differing approaches

The question is whether California Penal Code section 2933.6 is being applied to Petitioner for his 2006 gang validation and subsequent SHU housing assignment or whether, as Respondent alleges, section 2933.6 is being applied to Petitioner for his current, ongoing, post January 2010 prison gang membership. Lower federal courts have taken differing approaches in applying Supreme Court law when resolving Ex Post Facto Clause claims regarding time credits.

Some federal courts have considered the relevant date to be the date of the in-prison event. This approach generally results in no ex post facto violation being found. Cases that use the in-prison event as the relevant date for determining retrospectivity and the punishment include Hunter v. Ayers, 336 F.3d 1007, 1009–10 (9th Cir. 2003) (using date of prison misconduct as relevant date for analysis of amendment to law regarding credit loss and restoration); Ellis v. Norris, 232 F.3d 619, 620–21 (8th Cir. 2000) (state court's decision that repeal of statute that had allowed prison officials discretion to award additional good-time credits did not violate Ex Post Facto Clause was not contrary to or an unreasonable application of clearly established federal law—prisoner received all the accrued extra good-time credits and only lost the ability to be awarded additional good-time credits); Abed v. Armstrong, 209 F.3d 63, 66 (2d Cir. 2000) (administrative directive adopted ten years after petitioner was sentenced that disallowed good-time credits for inmates classified as Security Risk Group Safety Threat Members; "unlike Lynce and Weaver, the Directive was not applied retroactively" to petitioner because no good-time credit earned before the Directive was forfeited and petitioner was not so classified until after the Directive was in effect).

10

1       Other federal courts have considered the relevant date to be the date of the criminal
2   offense, conviction or sentencing.  This approach is more likely to result in a finding of an ex post
3   facto violation.  Cases that use the date of the criminal offense, conviction or sentence as the
4   relevant date for retrospectivity purposes include Moor v. Palmer, 603 F.3d 658, 664 (9th Cir.
5   2010) (statute that was amended in 1997 to require a psychological review as a precondition for
6   parole for offenses such as petitioner's "was applied retroactively" to petitioner who had been
7   convicted in 1994 at a time when a psychological review was not needed); Ellis v. Norris, 232
8   F.3d 619, 621 (8th Cir. 2000) (State "concedes that the repeal of extra good-time credit applies
9   retroactively, i.e., it applies to prisoners serving sentences imposed prior to the repeal, as well as to
10  those serving sentences imposed afterwards"); Flemming v. Oregon Bd. of Parole, 998 F.2d 721,
11  724 (9th Cir. 1993) (application of amended parole regulation that was enacted after petitioner's
12  offenses to calculate petitioner's sentence reduction "gives rise to the Supreme Court's first
13  'critical element' for an ex post facto violation").
14      The split among the lower federal courts indicates that there is no clearly established
15  Supreme Court law on the ex post facto analysis of in-prison events.  Accord Nevarez, 2012 WL
16  3646895, at *7.

### 3. State Court Decision

18      The state court rejected Petitioner's ex post facto claim and stated, in relevant part: "[Time
19  c]redits are not a vested right; they must be earned by the inmate."  Docket #15, Ex. 8.  It cannot
20  be said that the state court's rejection of Petitioner's ex post facto claim was contrary to, or
21  involved an unreasonable application of, clearly established Supreme Court precedent.  See 28
22  U.S.C. § 2254(d).
23      California Penal Code section 2933.6 is distinct from the legislative amendments at issue
24  in the Supreme Court cases discussed above in subsection (1).  For section 2933.6 to be
25  applicable, a prisoner must actively engage in misconduct.  In Lindsey, Greenfield, Weaver and
26  Lynce, however, the new laws automatically lengthened the petitioners' sentences without any
27  action taken by the prisoners, either by changing the length of the sentence; limiting the prisoners'

11

ability to earn good-time credits; or by cancelling credits. In Lindsey, the amended statute made mandatory a 15-year sentence for grand larceny. Under the old statute, 15 years had been the maximum sentence possible, but the courts had the discretion to sentence prisoners to a shorter term. The Supreme Court found an ex post facto violation when this amended statute was applied to a petitioner who had committed his crime before the statute's amendment. Lindsey, 301 U.S. at 400. In Greenfield, the amended statute prevented a prisoner from earning good conduct deductions for the first six months after his reincarceration following a parole violation. The Supreme Court affirmed the lower court's finding of an ex post facto violation when this amended statute was applied to a petitioner who had committed his crime before the statute's enactment. Scafati v. Greenfield, 390 U.S. 713. In Weaver, the Florida legislature decreased the rate at which good-time credits could be earned. The Supreme Court found an ex post facto violation when this was applied to prisoners sentenced before the statute's amendment because under the amended formula, a prisoner who performed satisfactory work and avoided disciplinary violations earned fewer good-time credits than he would have under the original formula. Weaver, 450 U.S. at 35. In Lynce, the Florida legislature passed a statute that cancelled overcrowding credits and applied the statute retroactively. The Supreme Court found an ex post facto violation, noting that the impact of the amended statute was not speculative; instead, the amended statute "made ineligible for early release a class of prisoners who were previously eligible — including some, like petitioner, who had actually been released." Lynce, 519 U.S. at 446–47.

In Petitioner's case, it is not his initial validation and placement in SHU that renders him ineligible for time credits. Rather, California Penal Code section 2933.6 applies to him because of his active and continuing gang membership. See, e.g., Nevarez v. Barnes, 749 F.3d 1124, 1128 (9th Cir. 2014) (finding that section 2933.6 was triggered because of prisoner's intervening conduct of continued gang affiliation and distinguishing section 2933.6 from the postconviction amendments in Weaver and Lynce) and Castlin v. Lewis, 2014 WL 897358, *7 (finding that prisoner's inability to earn good-time credits was based on his status as a gang member after 2010 and distinguishing section 2933.6 from the postconviction amendments in Weaver and Lynce). In

Lindsey, Greenfield, Weaver and Lynce, the petitioners could not recover their eligibility for a reduced sentence. Here, however, Petitioner can recover his eligibility to earn time credits if he successfully participates in the debriefing process. Cal. Code Regs. tit. 15, § 3378.1(a), (d).

In his traverse, Petitioner argues for the first time that he is incapable of being successfully debriefed because he was incorrectly validated as a prison gang member and therefore "has no information which would satisfy the respondents who must approve and/or validate him as a dropout . . . . Petitioner's lack of knowledge about the gang is proven by Petitioner's most recent gang status update of July 25, 2013, where no rule violation for gang participation or specific gang association knowledge on Petitioner's part was used to revalidate/update his validation." Docket #18 at 20–21 (sic). Since Petitioner has declined to be debriefed, Docket #15, Ex. 4 at 3, his conclusion that he could not be successfully debriefed is speculative. Moreover, the record reflects some evidence of ongoing, post 2010 misconduct by Petitioner. In 2013, prison officials relied on a 2012 updated Security Group Validation Review (CDCR Form 128B-2) to conclude that Petitioner is still an active prison gang member. Docket #15, Ex. 4 at 9.

In addition, it appears that Petitioner's ineligibility for early release is due to his own misconduct and not due to the workgroup reassignment. His 2010 sentencing calculation worksheet shows that he has been credited for the 446.81 days worth of time credits earned through January 25, 2010, but had also lost 630 days of credit, resulting in a net negative credit of 183.19 days. Docket #1, Ex. B.

Finally, as the state court decision recognized, California regulations have never created a right to time credits. The 2010 amendment of California Penal Code section 2933.6 prohibits prisoners placed in SHU upon validation as prison gang members or associates from earning sentence reduction credits pursuant to California Penal Code section 2933 (worktime credits)[8] or section 2933.05 (program credits).[9] California Penal Code § 2933.6(a). Both sections 2933

---

[8] California Penal Code section 2933 provides that for every six months of imprisonment, a prisoner shall be awarded credits toward sentence reductions.

[9] California Penal Code section 2933.05 provides for the possibility of credit reductions for inmates who successfully complete specific program performance objectives for approved

13

(worktime credits) and 2933.05 (program credits) state that credits are a privilege and not a right. Cal. Penal Code §§ 2933(c)[10] and 2933.05(b).[11]  These statutes only provide prisoners "a reasonable opportunity to participate" in these sentence reduction programs. Cal. Penal Code §§ 2933(c) and 2933.05(b).  Contrary to Petitioner's assertions, he did not have a vested right to time credits prior to the amendment of section 2933.6 pursuant to California law.  Nor does the record support a finding that his plea agreement guaranteed him time credits, irrespective of his behavior in prison.

After carefully reviewing the law and the record, the Court concludes that the state court rejection of Petitioner's ex post facto claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court precedent.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### D. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  See Rules Governing § 2254 Cases, Rule 11(a).

Petitioner has made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would find debatable this Court's assessment of Petitioner's claim that his rights under the Ex Post Facto Clause of the federal Constitution were violated when the amended version of California Penal Code section 2933.6 was applied to him.

---

rehabilitative programming.

[10] "Credit is a privilege, not a right. Credit must be earned and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every eligible prisoner shall have a reasonable opportunity to participate." Cal. Penal Code § 2933(c) (West 2014).

[11] "Program credit is a privilege, not a right. Prisoners shall have a reasonable opportunity to participate in program credit qualifying assignments in a manner consistent with institutional security and available resources.  Assignments made to program credit qualifying programs shall be made in accordance with the prisoner's case plan, when available." Cal. Penal Code § 2933.05(b) (West 2014).

See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **GRANTED** on Petitioner's claim that applying the amended version of California Penal Code section 2933.6 to him violated his rights under the Ex Post Facto Clause. No certificate of appealability is granted for Petitioner's claim regarding his plea agreement. Petitioner is cautioned that the Court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is GRANTED as to Petitioner's claim that applying the amended version of California Penal Code section 2933.6 to him violated his rights under the Ex Post Facto Clause of the United States Constitution.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: February 1, 2015

JON S. TIGAR
United States District Judge